UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION
_____

WAYLAND DILTS #406058,

                    Petitioner,                Case No. 1:13-cv-907

v.                                    Hon. Sally J. Berens

MIKE BROWN,[1]

                    Respondent.

_____/

**OPINION**

      This is a state prisoner's habeas corpus action brought under 28 U.S.C. § 2254. Petitioner Wayland Dilts is incarcerated with the Michigan Department of Corrections (MDOC) at the Kinross Correctional Facility in Kincheloe, Michigan. Following a jury trial in the Ingham County Circuit Court, Petitioner was convicted of nine counts of first-degree criminal sexual conduct (CSC), pursuant to Mich. Comp. Laws § 750.520b(1)(a) (victim under age 13); two counts of second-degree CSC, pursuant to Mich. Comp. Laws § 750.520c(1)(a) (victim under age 13); and one count of assault with intent to commit CSC, pursuant to Mich. Comp. Laws § 750.520g(2). On June 30, 2010, the court sentenced Petitioner to concurrent prison terms of 285 to 700 months for the CSC I convictions, 114 to 180 months for the CSC II convictions, and 38 to 60 months for the assault conviction. Petitioner has consented to the conduct of all proceedings in this case, including entry of a final judgment and all post-judgment motions, by a United States Magistrate Judge.

---

[1] Because Petitioner has been transferred to the Kinross Correctional Facility, Mike Brown, the Warden at that facility, is substituted as the Respondent pursuant to Federal Rule of Civil Procedure 25(d) and the caption amended as set forth above.

On August 20, 2013, Petitioner timely filed his habeas corpus petition. The original petition raised four grounds for relief, as follows:

I.      The trial court's admission of evidence under Mich. Comp. Laws § 768.27a constituted reversible error.

II.     Petitioner was denied the effective assistance of counsel at trial.

III.    Petitioner was denied a fair trial because of the trial judge's examination of witnesses.

IV.     It was structural error for the trial judge to tell the jury to "convict."

(Pet., ECF No. 1 at PageID.6–10.)

On March 10, 2016, Magistrate Judge Carmody granted Petitioner's motion to stay the proceedings in this matter and hold the petition in abeyance to allow Petitioner to return to state court to exhaust his state-court remedies on his unexhausted claims. (ECF No. 28.) After exhausting those remedies, Petitioner returned to this Court and filed an amended petition raising the following additional claims:

V.      On direct appeal, appellate counsel was constitutionally ineffective for failing to notice, raise, and preserve the issues now raised by Petitioner in his motion for relief from judgment and memorandum of law.

VI.     Petitioner was deprived of this Sixth Amendment right to a public trial, when the courtroom was closed to the public for the testimony of five prosecution witnesses, and when the courtroom was closed to the public while the court admonished a defense witness.

VII.    In each case, 09-001265-FC, 09-001332-FC, and 09-001331-FH, the trial court's beyond a reasonable doubt instruction on the burden of proof is constitutionally defective.

VIII.   Ineffective assistance of trial counsel, to the extent that prejudice should be presumed. Trial counsel failed to object to the closure of the courtroom during the trial, failed to object to the trial court's defective beyond-a-reasonable-doubt instruction, and failed to object to the trial courts [sic] failure to properly administer the jury oath.

IX.     Violation of Petitioner's due process rights where the prosecutor and trial judge repeatedly referred to complainants as victims.

X.      The trial court erroneously scored PRV2 (prior record variable) and OVs 3, 4, 9, 10, and 13 (offense variables).

XI.     The jury oath was not properly administered to the jury in the formed [sic] as defined in Mich. Comp. Laws § 768.14 and Mich. Ct. R. 2.511(H)(2) [sic].

XII.    Reversible error occurred where jurors were not instructed that they must unanimously agree as to which act(s) were proven.

(Am. Pet., ECF No. 41 at PageID.936–46.)

Respondent has filed answers to the petition and the amended petition (ECF Nos. 14 and 48), stating that the petition should be denied because the grounds are procedurally defaulted, lack merit, and are partially time-barred. Upon review and applying the standards of the Antiterrorism and Effective Death Penalty Act of 1996, Pub. L. 104-132, 110 Stat. 1214 (AEDPA), the Court will deny the petition.

## I. Factual background

The Michigan Court of Appeals set forth the essential facts of the case as follows:

Dilts sexually abused his own daughter, LD. Dilts also sexually abused LD's friends who lived next door, two young sisters, AC1 and AC2. Specifically, the trial court charged Dilts with four counts of CSC I against his daughter, two counts of CSC II against AC1, and five counts of CSC I and one count of CSC II against AC2.

LD testified that the abuse began with Dilts asking her, AC2, and another neighbor girl, JR, to put baby oil on his naked body and "massage" his back, stomach, legs, and penis. LD, AC2, and JR were under the age of six at this time. LD said that she and the two girls would masturbate Dilts in his bedroom. LD said that she did this "[e]very day," sometimes by herself, and sometimes with AC2. LD said this occurred while her mom was at work. Dilts babysat the young children and would give them money after they performed these acts.

LD said that when she was in first grade, about six years old, things escalated. Dilts made LD, AC2, and JR perform oral sex on him. LD said this occurred "all the time." LD also said that Dilts would sometimes pull his white minivan over on dirt roads and make her perform oral sex on him. LD testified that Dilts first tried to have sex with her when she was about eight or nine years old but stopped when she began to cry. After this event, however, LD said that Dilts had sex with her a "couple" of times. LD said the abuse did not stop until 2006, when she was ten years old.

3

AC2 and JR5 also testified at trial. The girls said that they would masturbate and perform oral sex on Dilts in his bedroom when no one was home. They also testified that Dilts would give them money afterwards. AC2 testified that she and LD performed oral sex on Dilts in a chair in his basement as well. AC2 also testified that Dilts attempted to have sex with her when she left school because she was sick and Dilts picked her up. Dilts was the emergency contact person for AC1 and AC2 because their mother was in prison and their father worked during school hours. Dilts told AC2 that if she did not perform oral sex on him she would not be able to see LD.

AC1 testified that Dilts made her put baby oil on his penis one day when he babysat her. Dilts said he would kill her if she did not do it or if she told someone. AC1 testified that she once refused to perform oral sex on Dilts. When she refused, Dilts made her stand in the corner while he hit her with a belt.

Dilts maintained that the girls were lying and that these events never occurred. . . .

(Mich. Ct. App. Nov. 8, 2011 Op., ECF No. 15-10 at PageID.606–07.) The trial court sentenced Petitioner as set forth above.

On direct appeal to the Michigan Court of Appeals, Petitioner raised the first three issues in his habeas petition through counsel and the fourth issue in his pro se Standard 4 brief. (ECF No. 15-10 at PageID.623, 738.) The court of appeals affirmed Petitioner's convictions in an unpublished opinion issued on November 8, 2011. (*Id.* at PageID.606–15.)

Petitioner then filed an application for leave to appeal to the Michigan Supreme Court, raising the same claims he had raised in the court of appeals. By order entered September 4, 2012, the Michigan Supreme Court denied the application because it was not persuaded that the questions presented should be reviewed. (ECF No. 1-1 at PageID.91.) Petitioner did not file a petition for writ of certiorari to the United States Supreme Court.

As noted above, after Petition filed his habeas petition, Magistrate Judge Carmody granted Petitioner's motion to stay the proceedings and hold the petition in abeyance while Petitioner returned to state court to exhaust his remedies on any unexhausted claims. Petitioner thereafter filed a motion pursuant to MCR 6.501 *et seq.* in the trial court, raising the latter eight issues set

4

forth above. On March 31, 2017, the trial court denied his motion. (ECF No. 49-4 at PageID.1200–07.) Petitioner then filed an application for leave to appeal in the Michigan Court of appeals, which was denied on October 17, 2017. (ECF No. 49-5 at PageID.1208.) Petitioner filed an application for leave to appeal to the Michigan Supreme Court, which denied his application on July 3, 2018. (ECF No. 49-6 at PageID.1231.)

## II.  AEDPA standard

The AEDPA "prevent[s] federal habeas 'retrials'" and ensures that state court convictions are given effect to the extent possible under the law. *Bell v. Cone*, 535 U.S. 685, 693-94 (2002). An application for writ of habeas corpus on behalf of a person who is incarcerated pursuant to a state conviction cannot be granted with respect to any claim that was adjudicated on the merits in state court unless the adjudication: "(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding." 28 U.S.C. § 2254(d). This standard is "intentionally difficult to meet." *Woods v. Donald*, 575 U.S. 312, 316 (2015) (internal quotation omitted).

The AEDPA limits the source of law to cases decided by the United States Supreme Court. 28 U.S.C. § 2254(d). This Court may consider only the holdings, and not the dicta, of the Supreme Court. *Williams v. Taylor*, 529 U.S. 362, 412 (2000); *Bailey v. Mitchell*, 271 F.3d 652, 655 (6th Cir. 2001). In determining whether federal law is clearly established, the Court may not consider the decisions of lower federal courts. *Williams*, 529 U.S. at 381-82; *Miller v. Straub*, 299 F.3d 570, 578-79 (6th Cir. 2002). Moreover, "clearly established Federal law" does not include decisions of the Supreme Court announced after the last adjudication of the merits in state court. *Greene v.*

5

*Fisher*, 565 U.S. 34, 37-38 (2011). Thus, the inquiry is limited to an examination of the legal landscape as it would have appeared to the Michigan state courts in light of Supreme Court precedent at the time of the state-court adjudication on the merits. *Miller v. Stovall*, 742 F.3d 642, 644 (6th Cir. 2014) (citing *Greene*, 565 U.S. at 38).

A federal habeas court may issue the writ under the "contrary to" clause if the state court applies a rule different from the governing law set forth in the Supreme Court's cases, or if it decides a case differently than the Supreme Court has done on a set of materially indistinguishable facts. *Bell*, 535 U.S. at 694 (citing *Williams*, 529 U.S. at 405-06). "To satisfy this high bar, a habeas petitioner is required to 'show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement.'" *Woods*, 575 U.S. at 316 (quoting *Harrington v. Richter*, 562 U.S. 86, 103 (2011)). In other words, "[w]here the precise contours of the right remain unclear, state courts enjoy broad discretion in their adjudication of a prisoner's claims." *White v. Woodall*, 572 U.S. 415, 424 (2014) (internal quotations omitted).

The AEDPA requires heightened respect for state factual findings. *Herbert v. Billy*, 160 F.3d 1131, 1134 (6th Cir. 1998). A determination of a factual issue made by a state court is presumed to be correct, and the petitioner has the burden of rebutting the presumption by clear and convincing evidence. 28 U.S.C. § 2254(e)(1); *Davis v. Lafler*, 658 F.3d 525, 531 (6th Cir. 2011) (en banc); *Lancaster v. Adams*, 324 F.3d 423, 429 (6th Cir. 2003); *Bailey*, 271 F.3d at 656. This presumption of correctness is accorded to findings of state appellate courts, as well as the trial court. *See Sumner v. Mata*, 449 U.S. 539, 546 (1981); *Smith v. Jago*, 888 F.2d 399, 407 n.4 (6th Cir. 1989).

## III.  Analysis

**A.    Petitioner's Motion for: (1) Immediate Consideration; (2) to Preclude Reliance on Certain Documents and Statements; and (3) for Summary Judgment on the Public-Trial Claim and Related Ineffective Assistance Claim**

Petitioner has filed a motion requesting several forms of relief, including immediate consideration of his habeas petition, preclusion of reference to or reliance on certain documents, and for summary judgment on certain claims. The motion will be denied.

First, Petitioner's request for immediate consideration is moot in light of the instant Opinion.

Second, Petitioner's request to preclude reference to that portion of the trial court's March 31, 2017 Order dealing with Petitioner's public-trial claim in his 6.500 motion is without merit. Petitioner contends that the March 31, 2017 Order is defective because it cites the trial court's June 10, 2016 Order—which is not in the record—rather than the trial transcript, which is a part of the record. Petitioner's argument fails because the March 31, 2017 Order sets forth the trial court's rationale for rejecting Petitioner's argument in his Rule 6.500 motion—"'public access was limited on certain occasions due to the sensitive nature of the proceedings—sexual offenses involving minors under the age of thirteen.'" (ECF No. 49-4 at PageID.1203 (quoting June 10, 2016 Order).) Whether that rationale was taken from the June 10, 2016 Order or the trial transcript is of no moment. Because the judge presided over the trial, she was certainly familiar with the proceedings and was not required to cite the trial transcript in addressing Petitioner's motion. The March 31, 2017 Order therefore provides a sufficient basis for AEDPA review, even though it relies on the same reasoning set forth in a prior order. Moreover, a review of the transcript shows that the trial court's rationale accurately comports with the record—minors were testifying about sexual abuse they experienced at the hands of Petitioner.

Last, given that the issues are otherwise fully briefed, the Court finds it inappropriate to consider Petitioner's public-trial-related issues under a summary judgment standard. Although Rule 12 of the Rules Governing Section 2254 Cases in the United States District Courts recognizes that the Federal Rules of Civil Procedure may be applied in habeas cases, their application is permitted only "to the extent that they are not inconsistent with any statutory provisions . . ." The Sixth Circuit and district courts within the circuit have recognized that either party may make a Rule 56 motion in a habeas proceeding. *See Sanders v. Freeman*, 221 F.3d 846, 851 (6th Cir. 2000); *Workman v.* Bell, 178 F.3d 759, 765 (6th Cir. 1998); *Redmond v. Jackson*, 295 F. Supp. 2d 767, 769-70 (E.D. Mich. 2003) (respondent's motion for summary judgment based on statute of limitations). But it is also true that Rule 56 and AEDPA standards are not congruent. On a motion for summary judgment, the moving party bears the burden of showing the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). The court must draw all inferences in a light most favorable to the non-moving party but may grant summary judgment when "the record taken as a whole could not lead a rational trier of fact to find for the non-moving party." *Agristor Fin. Corp. v. Van Sickle*, 967 F.2d 233, 236 (6th Cir. 1992) (quoting *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986)). In contrast, Section 2254(e)(1) alters this rule by presuming state-court factual findings to be correct unless rebutted by clear and convincing evidence. Hence, "due to the statutory presumption of correctness, the petitioner faces a comparatively higher burden in establishing the genuineness (or hearing worthiness) of contested facts." *Hauck v. Mills*, 941 F. Supp. 683, 687 (M.D. Tenn. 1996) (citing *Sumner v. Mata*, 449 U.S. 539, 547 (1981)) (stating that when state and federal courts review the same record, comity and federalism concerns mandate deference to state court factual findings). Accordingly, the Court finds no reason to consider Petitioner's separately-filed motion for

summary judgment in reviewing Petitioner's habeas petition under the AEDPA standard set forth above. *See Dellinger v. Mays*, No. 3:09-CV-104, 2018 WL 4102241, at *5 (E.D. Tenn. Aug. 28, 2018) ("Because review in this case is governed by the standards set forth in § 2254, the Court will not grant summary judgment in Petitioner's favor due to an asserted lack of compliance with the dictates of Rule 56.").

### B.      Direct Appeal Claims

#### 1.      Admission of Evidence under Mich. Comp. Laws § 768.27a

In his first claim, Petitioner asserts that the trial court erred in admitting other acts testimony from witness AL. The court admitted this evidence pursuant to Mich. Comp. Laws § 768.27a, which provides that in certain criminal sexual cases involving a minor, evidence that the defendant committed another listed offense against a minor on a separate occasion may be admitted "for its bearing on any matter to which it is relevant." AL, who was LD's cousin, was age 19 at the time of trial. She testified when she was between the ages of six and 12, Petitioner touched her breasts and made her touch his penis. (ECF No. 15-7 at PageID.503, 508.) She also testified that Petitioner liked baby oil and that he gave her money for touching him. (*Id.* at PageID.503, 506.)

Petitioner argued that the trial court abused its discretion in admitting AL's testimony and failed to provide adequate notice pursuant to the statute. The Michigan Court of Appeals rejected this claim as follows:

> Contrary to Dilts' assertion, the danger of unfair prejudice did not outweigh the probative value of AL's other acts testimony. As stated in [*People v.*] *Pattison*[, 276 Mich. App. 613, 621 (2007)], this evidence is "extraordinarily pertinent to a given defendant's behavior in a similar case." And in the case of other similar activity involving AL and Dilts, which paralleled the charged acts in that both allegedly included similar instances of touching, the use of baby oil, and the exchange of money, the relevance is clear. Moreover, AL's testimony had considerable probative value because both Dilts' propensity and the credibility of LD, AC1, AC2, and JR were significant issues in the case.

9

The danger of unfair prejudice was minimal under these circumstances because the challenged testimony lacked specificity and contained no graphic, offensive details of the type likely to arouse passion and prejudice a jury. AL testified only that the abuse had occurred, and her description of the specific circumstances and events surrounding the sexual abuse was minimal and in bland terms. Further, because the trial court took precautions to limit any prejudicial effect, it greatly reduced the danger of unfair prejudice. The trial court specifically instructed the jury that the evidence should only be considered for proper purposes:

> If you believe this evidence you must be very careful again, to consider it only for one limited purpose; that is, to help you judge the believability of testimony regarding the acts for which the defendant is now on trial.

> You must not consider this evidence for any other purpose. For example, you must not decide that it shows the defendant is a bad person and is likely to commit crimes. You must convict [sic] the defendant here because you think he's guilty of the other bad conduct.

Even if the trial Court erred, error in the admission or exclusion of evidence is not grounds for reversal unless refusal to take this action appears inconsistent with substantial justice. Thus, reversal is required only if the error is prejudicial. Here, given the weight and strength of the evidence against Dilts, we find that he cannot show that it is more probable than not that any error in admitting the challenged testimony affected the outcome of the trial.

We note that Dilts also asserts that the prosecutor failed to give adequate notice that he would call AL, as MCL 768.27(a) requires. However, Dilts does not explain how the prosecutor failed to comply with the MCL 768.27(a) requirements. Thus, Dilts has abandoned this issue, given that he does not argue or support the issue in any real sense. Additionally, even if Dilts had adequately briefed this argument, we need not consider it because Dilts did not present it in his statement of questions presented.

(ECF No. 15-10 at PageID.609–10(footnotes omitted).)

The extraordinary remedy of habeas corpus lies only for a violation of the Constitution. 28 U.S.C. § 2254(a). As the Supreme Court explained in *Estelle v. McGuire*, 502 U.S. 62 (1991), an inquiry as to whether evidence was properly admitted or improperly excluded under state law "is no part of a federal court's habeas review of a state conviction [for] it is not the province of a federal habeas court to reexamine state-court determinations on state-law questions." *Id.* at 67-68.

Rather, "[i]n conducting habeas review, a federal court is limited to deciding whether a conviction violated the Constitution, laws, or treaties of the United States." *Id.* at 68. State-court evidentiary rulings cannot rise to the level of due process violations unless they offend some principle of justice so rooted in the traditions and conscience of our people as to be ranked as fundamental. *Seymour v. Walker*, 224 F.3d 542, 552 (6th Cir. 2000) (quotation omitted); *accord Coleman v. Mitchell*, 268 F.3d 417, 439 (6th Cir. 2001); *Bugh v. Mitchell*, 329 F.3d 496, 512 (6th Cir. 2003). This approach accords the state courts wide latitude in ruling on evidentiary matters. *Seymour*, 224 F.3d at 552 (6th Cir. 2000). Here, because Petitioner presents this claim solely as one that the state courts erred under Michigan law, he fails to state a claim upon which habeas relief may be granted. State courts are the final arbiters of state law, and the federal courts will not intervene in such matters. *See Lewis v. Jeffers*, 497 U.S. 764, 780 (1990). Moreover, nothing in the record suggests that admission of this evidence amounted to a due process violation. Accordingly, this claim lacks merit.

## 2.    Ineffective Assistance of Counsel

Petitioner asserts in ground II that he was denied his Sixth Amendment right to the effective assistance of counsel. In particular, Petitioner argues that his counsel was ineffective because, prior to trial, he was unaware that Petitioner also had been charged for a particular incident concerning oral sex on a road trip.[2] (ECF No. 1 at PageID.7.)

In *Strickland v. Washington*, 466 U.S. 668 (1984), the Supreme Court established a two-prong test by which to evaluate claims of ineffective assistance of counsel. To establish a claim of ineffective assistance of counsel, the petitioner must prove: (1) that counsel's performance fell below an objective standard of reasonableness; and (2) that counsel's deficient performance

---

[2] Although Petitioner asserted three separate bases for ineffective assistance of counsel in his direct appeal, his only basis in his habeas petition is the circumstance the Michigan Court of Appeals described as "confusion over charges."

11

prejudiced the defendant resulting in an unreliable or fundamentally unfair outcome. *Id.* at 687. A court considering a claim of ineffective assistance must "indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Id.* at 689. The defendant bears the burden of overcoming the presumption that the challenged action might be considered sound trial strategy. *Id.* (citing *Michel v. Louisiana*, 350 U.S. 91, 101 (1955)); *see also Nagi v. United States*, 90 F.3d 130, 135 (6th Cir. 1996) (holding that counsel's strategic decisions were hard to attack). The court must determine whether, considering the circumstances as they existed at the time of counsel's actions, "the identified acts or omissions were outside the wide range of professionally competent assistance." *Strickland*, 466 U.S. at 690. Even if a court determines that counsel's performance was outside that range, the defendant is not entitled to relief if counsel's error had no effect on the judgment. *Id.* at 691.

Moreover, as the Supreme Court has observed, while "'[s]urmounting *Strickland*'s high bar is never an easy task,' . . . [e]stablishing that a state court's application of *Strickland* was unreasonable under § 2254(d) is all the more difficult." *Harrington v. Richter*, 562 U.S. 86, 105 (2011) (quoting *Padilla v. Kentucky*, 559 U.S. 356, 371 (2010)). Because the standards under both *Strickland* and Section 2254(d) are highly deferential, "when the two apply in tandem, review is 'doubly' so." *Harrington*, 562 U.S. at 105 (quoting *Knowles v. Mirzayance*, 556 U.S. 111, 123 (2009)). In those circumstances, "[t]he question [before the habeas court] is whether there is any reasonable argument that counsel satisfied *Strickland*'s deferential standard." *Id.*

The court rejected the claim as follows:

Dilts is correct that defense counsel was confused regarding one of the charges. Defense counsel objected during the prosecution's opening statement when the prosecutor mentioned an incident where Dilts allegedly made AC2 perform oral sex on a road trip. Defense counsel apparently believed this incident was not the basis for any of the charges. Counsel and the prosecutor reviewed the transcripts

from Dilts' preliminary examination. The transcripts indicated that Dilts had been bound over and charged for that incident.

Although defense counsel's confusion regarding whether Dilts was bound over and charged for the incident fell below an objective standard of reasonableness under prevailing professional norms, Dilts cannot show that counsel's initial confusion caused prejudice. Dilts asserts that counsel was "not prepared to defend the charge," but does not explain how counsel would have prepared had he not been confused or how that preparation would have changed the result of the proceedings. Counsel still represented Dilts at trial, cross-examined witnesses, called six witnesses, and argued on Dilts' behalf. Moreover, despite counsel's efforts, there was substantial evidence of guilt adduced at trial. Therefore, Dilts cannot show that the result of his trial would have been different if his counsel was not initially confused regarding the charge.

(ECF No. 15-10 at PageID.611 (footnote omitted).)

The court of appeals' rejection of this claim did not constitute an unreasonable application of *Strickland*. While counsel's failure to learn of and prepare for the additional charge constituted deficient performance, Petitioner fails to demonstrate "a reasonable probability that . . . the result of the proceeding would have been different," *Strickland*, 466 U.S. at 694, if counsel had been aware of the charge. In fact, the charge was only one of several CSC counts involving this minor. As the court noted, in spite of his confusion about the additional charge, counsel demonstrated a sufficient command of the case to provide an effective defense, which was that the victims were lying. Counsel thoroughly cross examined the minor involved in this charge (ECF No. 15-6 at PagteID.454–58), as well as the other witnesses who testified, called witnesses for the defense, and argued on Petitioner's behalf. Petitioner fails to explain what counsel could have done differently had he been aware of the additional charge. Therefore, because Petitioner fails to demonstrate prejudice, this ground lacks merit.

### 3.       Judicial Bias

Petitioner's grounds III and IV allege judicial bias. In ground III, Petitioner contends that the trial judge strayed into the prosecutor's domain when she examined certain witnesses and

interrupted the examination of other witnesses. Petitioner contends that the trial judge acted as the prosecutor during the course of the trial. In ground IV, Petitioner contends that the trial judge was biased, as evinced by the other acts evidence instruction, which omitted the word "not" before the word "convict."

The court of appeals rejected both arguments as follows:

Dilts does not explain how the incidents he cites demonstrate bias. Rather, he merely asserts that they do. In any event, the trial court had discretion to control the testimony of Dilts' wife when she was talking out of turn; had discretion to control Dilts' testimony when he continued to speak and offer unsolicited testimony; and had discretion to make vulnerable witnesses more comfortable. Moreover, the trial court's statements concerned the conduct expected from a witness during the trial and not the substantive merits of the case. Therefore, they were not likely to unduly influence the jury or lead it to believe that the trial court had an opinion on the case. The trial court's decision to make a vulnerable witness more comfortable likewise had nothing to do with the substantive merits of the case. For these reasons, Dilts does not show that the trial court's conduct pierced the veil of judicial impartiality and unduly influenced the jury.

Dilts also appears to take issue with the trial court's examination of certain witnesses, asserting that the trial court "questioned [witnesses] to bring out more damaging testimony." While it is true that the trial court asked witnesses additional questions regarding the sexual assaults, the inquiries were material to the case, limited in scope, and did not communicate to the jury an opinion that the trial judge may have had regarding these matters. As such, these questions did not unjustifiably arouse suspicion in the jurors' minds regarding a witness's credibility or influence the jury to the detriment of Dilts' case. Moreover, Dilts cannot show he was prejudiced as a result of the trial court's questioning. The trial court instructed the jury that its comments, rulings, questions, and instructions are not evidence, and that a person accused of a crime is presumed innocent. The trial court also instructed the jury that "[i]f you believe that I have an opinion about how you should decide this case, you must pay no attention to that opinion." "It is well established that jurors are presumed to follow their instructions."

In a pro se supplemental brief, filed pursuant to Supreme Court Administrative Order No.2004–6, Standard 4, Dilts also argues that the trial judge was biased. In support, he points to a mistake regarding the other acts evidence instruction. As noted above, the trial judge left out the word "not" before the word "convict" in this instruction. Dilts argues that the trial judge did this intentionally because she was biased against him. However, we do not believe that this mistake reflects any bias on behalf of the trial judge. There is nothing to indicate that the trial judge did this intentionally. It is more likely that the trial judge simply misspoke. We do not

14

find such an apparent mistake sufficient to overcome the heavy presumption of judicial impartiality.

(ECF No. 15-10 at PageID.614–15.)

Respondent correctly argues that this claim is procedurally defaulted. Where "a state prisoner has defaulted his federal claims in state court pursuant to an independent and adequate state procedural rule, federal habeas review of the claims is barred unless the prisoner can demonstrate cause for the default and actual prejudice as a result of the alleged violation of federal law, or demonstrate that failure to consider the claims will result in a fundamental miscarriage of justice." *Coleman v. Thompson*, 501 U.S. 722, 750 (1991). A procedural default "provides an independent and adequate state-law ground for the conviction and sentence, and thus prevents federal habeas corpus review of the defaulted claim, unless the petitioner can demonstrate cause and prejudice." *Gray v. Netherland*, 518 U.S. 152, 162 (1996). Not every state procedural rule will warrant application of the procedural default doctrine. Only a state procedural rule that was "'firmly established and regularly followed' at the time at which it [was] to be applied," *Ford v. Georgia*, 498 U.S. 411, 424 (1991), will support application of the doctrine. "For a habeas claim to be procedurally defaulted on the basis of a state procedural rule, the petitioner must have violated a procedural rule, but the state court must also have based its decision on the procedural default." *Simpson v. Jones*, 238 F.3d 399, 407 (6th Cir. 2000). Here, Petitioner failed to comply with the state's contemporaneous objection rule (ECF No. 15-10 at PageID.613), "an adequate and independent state ground for foreclosing federal review." *Taylor v. McKee*, 649 F.3d 446, 451 (6th Cir. 2011). Moreover, the court of appeals' plain error review will not excuse a procedural default. "[A] state court's plain error analysis does not save a petitioner from procedural default. Plain error analysis is more properly viewed as a court's right to overlook procedural defects to prevent

manifest injustice, but is not equivalent to a review of the merits." *Lundgren v. Mitchell*, 440 F.3d 754, 765 (6th Cir. 2006) (citations omitted).

To show cause sufficient to excuse a failure to raise claims on direct appeal, Petitioner must point to "some objective factor external to the defense" that prevented him from raising the issue. *Murray v. Carrier*, 477 U.S. 478, 488 (1986); *see McCleskey v. Zant*, 499 U.S. 467, 497 (1991). Petitioner has not attempted to explain his failure to object during trial. Where a petitioner fails to show cause, the court need not consider whether he has established prejudice. *See Engle v. Isaac*, 456 U.S. 107, 134 n.43 (1982); *Leroy v. Marshall*, 757 F.2d 94, 100 (6th Cir. 1985). Petitioner also has not demonstrated that manifest injustice would result because he has not made a colorable claim of innocence; he has not shown that any constitutional error "probably" resulted in the conviction of one who was actually innocent. *Schlup v. Delo*, 513 U.S. 298, 322 (1995) (citing *Murray*, 477 U.S. at 495). Accordingly, the Court need not reach the merits of these claims.

### C.      Claims Raised in Rule 6.500 Motion[3]

#### 1.      Denial of Public Trial/Ineffective Assistance of Counsel

Petitioner contends that the trial court denied him his Sixth Amendment right to a public trial when it closed the courtroom during the testimony of four minors who were prosecution

---

[3] In his response to Petitioner's amended petition, Respondent argues that the claims set forth therein are time-barred because Petitioner failed to return to this Court within the allotted time. (ECF No. 48 at PageID.1076–82.) In her March 10, 2016 Order granting Petitioner's motion to stay proceedings and hold the petition in abeyance, Magistrate Judge Carmody gave Petitioner 30 days after he exhausted his administrative remedies to file an amended petition in this matter. The Michigan Supreme Court denied Petitioner's application for leave to appeal on July 3, 2018. (ECF No. 49-6 at PageID.1231.) Petitioner did not file a motion to lift the stay and reopen the case until August 13, 2018, although Petitioner signed the motion on August 10, 2018. (ECF No. 38 at PageID.835.) In her order granting Petitioner's motion to lift the stay and reopen the case, Magistrate Judge Carmody erroneously determined that she had given Petitioner 45 days to return to this Court to obtain a lift of stay. (ECF No. 40 at PageID.923.) Accordingly, in order to comply with the March 10, 2016 Order, Petitioner was required to sign and mail his motion to lift the stay and reopen the case by August 2, 2018. Therefore, barring other circumstances, Petitioner's motion to lift the stay was untimely. However, in his reply, Petitioner states that he did not receive the

witnesses and while the trial court admonished Petitioner's wife, Heather Dilts, resulting in structural error. Petitioner argues that the trial court closed the courtroom for the testimonies of these witnesses simply based on the prosecutor's request, without presenting any evidence as to why closure was necessary and the persons who should be excluded from the courtroom. Alternatively, Petitioner contends that his trial counsel was ineffective for failing to object to the closure of the courtroom. Because these claims are related, the Court will address them together.

Respondent argues that Petitioner waived this claim because he failed to object to the closure of the courtroom during trial.

The Sixth Amendment to the United States Constitution guarantees that, "[i]n all criminal prosecutions, the accused shall enjoy the right to a speedy and public trial." U.S. Const. amend. VI; *see also In re Oliver*, 333 U.S. 257, 278 (1948) (holding this right to be binding on the states through the due process clause of the Fourteenth Amendment). "The requirement of a public trial is for the benefit of the accused; that the public may see he is fairly dealt with and not unjustly condemned, and that the presence of interested spectators may keep his triers keenly alive to a sense of their responsibility and to the importance of their functions." *Waller v. Georgia*, 467 U.S. 39, 46 (1984) (internal quotation marks and citations omitted). Because of the "'great, though intangible, societal loss that flows' from closing courthouse doors," the denial of a right to a public trial is considered a structural error for which prejudice is presumed. *Id.* at 50 n.9 (quoting *People*

---

Michigan Supreme Court's order until July 16, 2018. (ECF No. 52 at PageID.1329.) The prison mailroom's date-stamp supports this claim. (ECF No. 43-1 at PageID.1035.) By the time Petitioner received the order, close to half of the 30-day period had expired. Given Petitioner's untimely receipt of the July 3, 2018 Order, Petitioner has identified sufficient circumstances beyond his control to warrant equitable tolling of the 30-day period. *See Graham-Humphreys v. Memphis Brooks Museum of Art, Inc.*, 209 F.3d 552, 560 (6th Cir. 2000) (stating that courts employ equitable tolling "only when a litigant's failure to meet a legally-mandated deadline unavoidably arose from circumstances beyond that litigant's control"). Accordingly, the Court concludes that Petitioner timely filed his motion to lift the stay and reopen the case.

*v. Jones*, 391 N.E. 2d 1335, 1340 (N.Y. 1979)). In other words, when a defendant has been deprived of his right to a public trial, the government may not deprive the defendant of a new trial through harmless error analysis. *Arizona v. Fulminante*, 499 U.S. 279, 309–10 (1991). Thus, given these concerns, to justify the closure of a courtroom over the objections of a defendant, "the party seeking to close [a public] hearing must advance an overriding interest that is likely to be prejudiced, the closure must be no broader than necessary to protect that interest, the trial court must consider reasonable alternatives to closing the proceeding, and it must make findings adequate to support the closure." *Waller*, 467 U.S. at 48 (applying test in *Press–Enterprise Co. v. Superior Court*, 464 U.S. 501, 510 (1984), to a Sixth Amendment public trial claim). Accordingly, the right to a public trial is not absolute, as it is subject to exceptions based on the trial court's balancing of interests informing the closure decision. *Id.* at 45.

More recently, the Supreme Court has explained that the proper remedy for a structural violation turns on when the petitioner raises the issue. "[W]here there is an objection at trial and the issue is raised on direct appeal, the defendant generally is entitled to 'automatic reversal' regardless of the error's actual 'effect on the outcome.'" *Weaver v. Massachusetts*, 137 S. Ct. 1899, 1910 (2017) (quoting *Neder v. United States*, 527 U.S. 1, 7 (1999)). A different rule applies, however, when the petitioner fails to raise the issue on direct review and asserts it for the first time in an ineffective assistance of counsel claim:

> To obtain relief on the basis of ineffective assistance of counsel, the defendant as a general rule bears the burden to meet two standards. First, the defendant must show deficient performance—that the attorney's error was "so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." *Strickland v. Washington*, 466 U.S. 668, 687, 104 S. Ct. 2052, 80 L.Ed.2d 674 (1984). Second, the defendant must show that the attorney's error "prejudiced the defense." *Ibid*.

*Id.* Even when counsel's error concerns a structural right, such as the right to a public trial, "*Strickland* prejudice is not shown automatically. Instead, the burden is on the defendant to show

18

either a reasonable probability of a different outcome in his or her case or . . . to show that the

particular public-trial violation was so serious as to render his or her trial fundamentally unfair."

*Id.* at 1911 (internal citation omitted). The Court explained its rational for the different standards

as follows:

> When a defendant first raises the closure in an ineffective-assistance claim . . . , the trial court is deprived of the chance to cure the violation either by opening the courtroom or by explaining the reasons for closure.
>
> Furthermore, when state or federal courts adjudicate errors objected to during trial and then raised on direct review, the systemic costs of remedying the error are diminished to some extent. That is because, if a new trial is ordered on direct review, there may be a reasonable chance that not too much time will have elapsed for witness memories still to be accurate and physical evidence not to be lost. There are also advantages of direct judicial supervision. Reviewing courts, in the regular course of the appellate process, can give instruction to the trial courts in a familiar context that allows for elaboration of the relevant principles based on review of an adequate record. For instance, in this case, the factors and circumstances that might justify a temporary closure are best considered in the regular appellate process and not in the context of a later proceeding, with its added time delays.
>
> When an ineffective-assistance-of-counsel claim is raised in postconviction proceedings, the costs and uncertainties of a new trial are greater because more time will have elapsed in most cases. The finality interest is more at risk, *see Strickland*, 466 U.S., at 693–694, 104 S. Ct. 2052 (noting the "profound importance of finality in criminal proceedings"), and direct review often has given at least one opportunity for an appellate review of trial proceedings. These differences justify a different standard for evaluating a structural error depending on whether it is raised on direct review or raised instead in a claim alleging ineffective assistance of counsel.

*Id.* at 1912.

Although the right to a public trial is a fundamental right, it can be waived if a habeas

petitioner either acquiesces to the closure of the courtroom or fails to object. *See Johnson v. Sherry*,

586 F.3d 439, 444 (6th Cir. 2009), *abrogated on other grounds* by *Weaver*, ("[T]he Sixth

Amendment right to a trial that is 'public,' provide[s] benefits to the entire society more important

than many structural guarantees; but if the litigant does not assert [it] in a timely fashion, he is

foreclosed.") (quoting *Freytag v. Commissioner*, 501 U.S. 868, 896 (1991)); *Peretz v. United*

19

*States*, 501 U.S. 923, 936–37 (1991) (citing *Levine v. United States*, 362 U.S. 610, 619 (1960));
*see also United States v. Reagan*, 725 F.3d 471, 488–89 (5th Cir. 2013) (defendants waived their
claim that right to a public trial was violated by the closing of the courtroom during voir dire,
hence, the claim was unreviewable on appellate review); *United States v. Christi*, 682 F.3d 138,
142–43 (1st Cir. 2012) (defendant waived any claim of error in court limiting public access to
courtroom during most of jury instructions by counsel's failure to object); *United States v. Rivera*,
682 F.3d 1223, 1232 (9th Cir. 2012) (defendant may forfeit the right to a public trial, either by
affirmatively waiving it or by failing to assert it in a timely fashion).

     Even though Petitioner did not expressly agree on the record to closure of the courtroom
during the minors' testimonies, counsel's failure to object may be binding. *See New York v. Hill*,
528 U.S. 110, 114–15 (2000) (noting that for many rights, "waiver may be effected by action of
counsel"). In *Johnson*, *supra*, the Sixth Circuit essentially acknowledged that counsel's failure to
object to closure of the courtroom waived the petitioner's right to a public trial. 586 F.3d at 444.
Other courts have held that  a "defendant's attorney's waiver of the right to a public trial is effective
on the defendant." *United States v. Hitt*, 473 F.3d 146, 155 (5th Cir. 2006). Here, given counsel's
failure to object to the courtroom closures, Petitioner is deemed to have waived his right to a public
trial.

     Because Petitioner did not raise his public-trial claim until he filed his Rule 6.500 motion,
when he first asserted his ineffective assistance of counsel claim, the issue is whether Petitioner
can meet *Strickland*'s requirements. *Weaver*, 137 S. Ct. at 1910. In rejecting his ineffective
assistance of counsel claim, the trial found that Petition had not "shown that his trial counsel's
performance fell below an objective standard of reasonableness or that the result of his trial would
have been different." (ECF No. 49-4 at PageID.1204.) Even if counsel's failure to object to the

closures was objectively unreasonable, Petitioner fails to show that he was prejudiced by counsel's failure to object. Contrary to Petitioner's assertion, prejudice is not presumed, but is an element that Petitioner must prove. *Id.* at 1911. Here, Petitioner fails to show a reasonable probability of a different outcome in the case had his counsel objected to the closures. The courtroom was closed only as to the minors' testimonies, and Petitioner fails to show or argue that they would have testified differently had the courtroom remained open to the public. Moreover, the testimony was recorded and transcribed, and nothing in the record indicates that there was reason for concern about the closed courtroom. As the Eleventh Circuit observed in *Purvis v. Crosby*, 451 F.3d 734 (11th Cir. 2006):

> Purvis cannot show that an objection from his counsel would have caused the factfinder to have a reasonable doubt about his guilt. If counsel had objected in a timely fashion and had persuaded the trial judge not to partially close the courtroom, there is no reason to believe that would have changed the victim's testimony in a way which would have created a reasonable doubt in the jury's mind. The victim could just as well have been a more sympathetic or credible witness if forced to testify publicly. We do not know, and when we do not know the party with the burden loses, and here that party is Purvis.

*Id.* at 738–39. Accordingly, Petitioner is not entitled to relief on these claims.

### 2. Defective Jury Instructions/Ineffective Assistance of Counsel

In ground VII, Petitioner asserts that the jury instructions were constitutionally defective regarding the burden of proof because, rather than setting the separate counts out by case number (three cases were consolidated for trial), the court grouped the counts together by charge. In ground XII, Petitioner contends that the instructions were defective because the trial court should have instructed the jurors that they must unanimously agree on which act(s) were proven. Finally, Petitioner alleges in ground VIII that trial counsel was ineffective for failing to object to the defective burden of proof instruction.

21

As an initial matter, Respondent contends that grounds VI through XII are procedurally defaulted because the trial court denied Petitioner relief on the grounds that he failed to show good cause and actual prejudice, as required by Mich. Ct. R. 6.508(D)(3), for his failure to raise his claims on direct appeal. (ECF No. 49-4 at PageID.1203.) Failure to meet the requirements of Rule 6.508(D)(3) provides an independent an adequate state ground for applying the procedural default doctrine. *See Howard v. Bouchard*, 405 F.3d 459, 477 (6th Cir. 2005). However, the Supreme Court has held that federal courts are not required to address a procedural-default issue before deciding against the petitioner on the merits. *See Hudson v. Jones*, 351 F.3d 212, 216 (6th Cir. 2003) (citing *Lambrix v. Singletary*, 520 U.S. 518, 525 (1997) ("Judicial economy might counsel giving the [other] question priority, for example, if it were easily resolvable against the habeas petitioner, whereas the procedural-bar issue involved complicated issues of state law."), and *Nobles v. Johnson*, 127 F.3d 409, 423-24 (5th Cir. 1997) (deciding against the petitioner on the merits even though the claim was procedurally defaulted)). *See also* 28 U.S.C. § 2254(b)(2) ("An application for a writ of habeas corpus may be denied on the merits, notwithstanding the failure of the applicant to exhaust the remedies available in the courts of the State."). Where, as here, the procedural default issue raises more questions than the case on the merits, the Court may assume without deciding that there was no procedural default or that Petitioner could show cause and prejudice for that default. *See Hudson*, 351 F.3d at 215–16; *Binder v. Stegall*, 198 F.3d 177, 178 (6th Cir. 1999). Because that appears to be the case with the procedurally-defaulted grounds, the Court will look beyond Petitioner's procedural default and simply address the merits of his claims.

Regarding grounds VII and XII, the trial court rejected these claims for the following reasons:

> Next, contrary to Defendant's assertions, the instructions regarding the burden of proof and the particular elements to be proven by the prosecution were not

constitutionally deficient. Due to the fact that the above-mentioned docket numbers were consolidated on March 1, 2010, the jury instructions had to be carefully constructed as to incorporate all relevant charges, elements, and law. The instructions properly instructed the jury that to prove each charge, the prosecutor had to prove each element of the charge beyond a reasonable doubt. See Trial Transcript, Volume IV, 860:3-17; 870:10-873:8, March 29, 2010.

. . . .

With regard to Defendant's seventh argument, the jury was given the appropriate unanimity instruction as it pertained to the charges against Defendant. See id. at 165:25-166:2; see also March 29, 2010 Trial Transcript, supra at 865:7-867:19. Further, Defendant has not shown any evidence of juror confusion that would have made the general unanimity instruction insufficient. *See People v Cooks*, 446 Mich 503, 529-30; 521NW2d275 (1994).

(ECF No. 49-4 at PageID.1203–05.)

The Supreme Court repeatedly has rebuffed due process challenges to erroneous jury instructions. *Waddington v. Sarausad*, 555 U.S. 179, 192-94 (2009); *Henderson v. Kibbe*, 431 U.S. 145, 152 (1977); *Levingston v. Warden*, 891 F.3d 251, 255 (6th Cir. 2018). Typically, a claim that a trial court gave an improper jury instruction or failed to give a requested instruction is not cognizable on habeas review. Instead, Petitioner must show that the erroneous instruction so infected the entire trial that the resulting conviction violates due process. *Henderson*, 431 U.S. at 155; *see also Estelle*, 502 U.S. at 75 (erroneous jury instructions may not serve as the basis for habeas relief unless they have so infused the trial with unfairness as to deny due process of law); *Rashad v. Lafler*, 675 F.3d 564, 569 (6th Cir. 2012) (same); *Sanders v. Freeman*, 221 F.3d 846, 860 (6th Cir. 2000). If Petitioner fails to meet this burden, he fails to show that the jury instructions were contrary to federal law. *Id.*

Petitioner fails to meet this difficult standard because nothing in the record suggests that the jury instructions resulted in a trial so unfair that it denied Petitioner due process. Given that three separate cases involving similar charges were consolidated for trial, the trial court reasonably grouped the charges to provide the jury with an easy-to-follow roadmap of the elements they must

23

find on each different type of charge. (ECF No. 15-8 at PageID.590-91.) Moreover, the trial court

reviewed the verdict form with the jury, which set forth each charge by its separate case number.

(*Id.* at PageID.591–92.) Petitioner fails to show that grouping of the instructions violated Michigan

law or clearly established federal law. Therefore, he is not entitled to relief on this claim.

As for Petitioner's unanimity argument, there is no clearly established federal

constitutional right to a unanimous verdict in state criminal cases. *See, e.g., Jordan v. Berghuis*,

No. 07-CV-12229, 2009 WL 1798861, at \*9 (E.D. Mich. June 23, 2009) ("While Michigan law

provides a right to a unanimous verdict in criminal cases, there is no federal constitutional right to

a unanimous verdict in criminal cases."); *Rogers v. Howes*, 64 F. App'x 450, 454 (6th Cir. 2003)

("In *Schad v. Arizona*, 501 U.S. 624, 111 S. Ct. 2491, 115 L.Ed.2d 555 (1991), the Supreme Court

held that a conviction under an instruction that did not require the jury to unanimously agree upon

one of the alternative theories of premeditated murder and felony murder did not constitute a denial

of due process. The Court explained that it had 'never suggested that in returning general verdicts

in such cases the jurors should be required to agree upon a single means of commission.' *Id.* at

631, 111 S. Ct. 2491."). While Michigan law does require a unanimous verdict, a general

instruction that the jury's decision must be unanimous is all that is required unless the elements

can be satisfied by alternative acts that are materially distinct or there is reason to believe the jurors

might be confused or disagree about the factual basis of the defendant's guilt. *People v. Cooks*,

446 Mich. 503, 512–13 (1994). Here, the trial court found no basis to depart from the rule that a

general unanimity instruction is sufficient. This interpretation of state law is binding on this Court.

*Davidson v. Lindamood*, No. 18-5593, 2018 WL 6431035, at \*3 (6th Cir. Dec. 3, 2018) (citing

*Bradshaw v. Richey*, 546 U.S. 74, 76 (2005) (per curiam)). Accordingly, Petitioner is not entitled

to habeas relief on this claim.

24

Petitioner's claim that his counsel was ineffective for failing to object to the trial court's burden of proof instruction also lacks merit. As to this claim, the trial court said:

> With regard to the third argument, Defendant has not shown how his trial counsel's performance fell below an objective standard of reasonableness or that the result of his trial would have been different. See *People v Grant*, 470 Mich 477, 485; 684 NW2d 686 (2004). Notably, this Court does not find the alleged errors to be actual errors.

(ECF No. 49-4 at PageID.1204.) The trial court applied the *Strickland* standard set forth above. Therefore, it cannot be said that the court applied a standard contrary to clearly established federal law. The question is whether the trial court applied the standard unreasonably. *Harrington*, 562 U.S. at 105. Petitioner not only fails to demonstrate that counsel's performance was deficient—that is, that his failure to object fell below an objective standard of reasonableness—but also that there is a reasonable probability that the result would have been different had counsel objected. In these circumstances, it cannot be said that the trial court's conclusion was contrary to, or an unreasonable application of, *Strickland*.

Accordingly, Petitioner is not entitled to relief on this claim.

### 3.    References to Minors as "Victims"

In ground IX, Petitioner contends that his right to due process was violated by the prosecutor's and trial court's repeated references to the complainants as victims. The trial court rejected the claim as follows:

> Defendant's fourth argument is without merit because Defendant was not denied a fair trial or an impartial jury. This Court clearly instructed the jury that its comments were not evidence and that any perceived opinion or belief was to be ignored. See March 29, 2010 Trial Transcript, *supra* at 861 :17-25; see also *Dilts*, supra at 9. This Court also emphasized to the jury that they were the fact-finders and should decide the case from the evidence. See March 29, 2010 Trial Transcript, *supra* at 862:1-2. As held by the Michigan Supreme Court in *People v Graves* and further recognized by the Michigan Court of Appeals while this case was on appeal, "'[i]t is well established that jurors are presumed to follow their instructions.'" *Dilts*, *supra* at 9 (quoting *People v Graves*, 458 Mich 476, 486; 581NW2d229 (1998)).

(ECF No. 49-4 at PageID.1204.)

To be entitled to habeas relief based on prosecutorial misconduct, the petitioner must demonstrate that the prosecutor's improper conduct "'so infected the trial with unfairness as to make the resulting conviction a denial of due process.'" *Darden v. Wainwright*, 477 U.S. 168, 181 (1986) (quoting *Donnelly v. DeChristoforo*, 416 U.S. 637, 643 (1974)). "[T]he touchstone of due process analysis . . . is the fairness of the trial, not the culpability of the prosecutor." *Smith v. Phillips*, 455 U.S. 209, 219 (1982)). In evaluating the impact of the prosecutor's alleged misconduct, a court must consider the extent to which the claimed misconduct tended to mislead the jury or prejudice the petitioner, whether it was isolated or extensive, and whether the claimed misconduct was deliberate or accidental. *See United States v. Young*, 470 U.S. 1, 11–12 (1985). The court also must consider the strength of the overall proof establishing guilt, whether the conduct was objected to by counsel and whether a curative instruction was given by the court. *See id.* at 12–13; *Darden*, 477 U.S. at 181–82; *Donnelly*, 416 U.S. at 646–47; *Berger v. United States*, 295 U.S. 78, 84–85 (1935).

Due process demands that the trial judge be unbiased. *In re Murchison*, 349 U.S. 133, 136 (1955) ("A fair trial in a fair tribunal is a basic requirement of due process. Fairness of course requires an absence of actual bias in the trial of cases."). "[T]he Due Process Clause clearly requires a fair trial in a fair tribunal before a judge with no actual bias against the defendant or interest in the outcome of his particular case." *Bracy v. Gramley*, 520 U.S. 899, 904–05 (1997) (internal quotation marks and citation omitted); *Tumey v. Ohio*, 273 U.S. 510, 535 (1927). A judge is unconstitutionally biased if he has "a deep-seated favoritism or antagonism that makes fair judgment impossible." *Coley v. Bagley*, 706 F.3d 741, 750 (6th Cir. 2013) (citing *Mayberry v. Pennsylvania*, 400 U.S. 455, 465–66 (1971)).

The courts indulge "a presumption of honesty and integrity in those serving as adjudicators." *Withrow v. Larkin*, 421 U.S. 35, 47 (1975). "The presumption of impartiality stems not merely from the judicial-bias caselaw, *see* [*Withrow*], but from the more generally applicable presumption that judges know the law and apply it in making their decisions, *see Lambrix v. Singletary*, 520 U.S. 518, 532 n.4 (1997), and the even more generally applicable presumption of regularity, *see Parke v. Raley*, 506 U.S. 20, 30-31 (1992); *United States v. Chem. Found., Inc.*, 272 U.S. 1, 14-15 (1926)." *Coley*, 706 F.3d at 751.

Petitioner fails to demonstrate a due process violation because he has not shown that the prosecutor's references to the complainants as "victims" resulted in an unfair trial. Given the substantial amount of evidence pointing to Petitioner's guilt, there is no reasonable basis to conclude that the prosecutor's use of this innocuous descriptor rendered the proceeding unfair. Nor has Petitioner demonstrated a plausible basis to conclude that the trial judge acted in a biased manner during the trial simply because she used the term "victims." As the trial judge observed, she instructed the jurors that they were to ignore any perceived opinion or belief on the part of the court and that they, alone, were the fact-finders and should decide the case based on the evidence before them and not on the court's comments. Moreover, the trial court's rejection of this claim was neither contrary to, nor an unreasonable application of, clearly established federal law. *See Garcia-Dorantes v. Warren*, 769 F. Supp. 2d 1092, 1105 (E.D. Mich. 2011) (rejecting habeas claim that the prosecutor's repeated references to complainants as "victims" unfairly invoked sympathy for the complainants).

Accordingly, Petitioner is not entitled to habeas relief on this claim.

### 4.    Guidelines Scoring Errors

Petitioner's ground X contends that the trial court erred in scoring his sentencing guidelines.

"[A] federal court may issue the writ to a state prisoner 'only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States.'" *Wilson v. Corcoran*, 562 U.S. 1, 5 (2010) (quoting 28 U.S.C. § 2254(a)). A habeas petition must "state facts that point to a 'real possibility of constitutional error.'" *Blackledge v. Allison*, 431 U.S. 63, 75 n.7 (1977) (quoting Advisory Committee Note to Rule 4, Rules Governing Habeas Corpus Cases). The federal courts have no power to intervene on the basis of a perceived error of state law. *Wilson*, 562 U.S. at 5; *Bradshaw v. Richey*, 546 U.S. 74, 76 (2005); *Estelle*, 502 U.S. at 67–68; *Pulley v. Harris*, 465 U.S. 37, 41 (1984). Accordingly, claims concerning the improper application of, or departures from, sentencing guidelines are state-law claims and typically are not cognizable in habeas corpus proceedings. *See Hutto v. Davis*, 454 U.S. 370, 373–74 (1982) (federal courts normally do not review a sentence for a term of years that falls within the limits prescribed by the state legislature); *Austin v. Jackson*, 213 F.3d 298, 301–02 (6th Cir. 2000) (alleged violation of state law with respect to sentencing is not subject to federal habeas relief).

Here, Petitioner contends that the trial court erred in scoring certain prior record and offense variables and that "[c]orrecting the scores will place petitioner in a lower range, reducing his prison sentence." (ECF No. 41 at PageID.943.) This is purely a state-law claim that is not cognizable on habeas review. As the Supreme Court has explained, "it is not the province of a federal habeas court to reexamine state-court determinations on state-law questions." *Estelle v. McGuire*, 502 U.S. 62, 67–68 (1991). Moreover, the trial judge's decision that her scoring of the sentencing guidelines was correct (ECF No. 49-4 at PageID.1204–05), is binding on this Court. *See Wainwright v. Goode*, 464 U.S. 78, 84 (1983).

Accordingly, Petitioner is not entitled to relief on this claim.

### 5.        Failure to Administer Jury Oath/Ineffective Assistance

In ground XI, Petitioner contends that the trial court failed to administer the jury oath in accordance with Michigan law and court rules. Petitioner further contends in ground VIII that that his trial counsel was ineffective for failing to object to the trial court's failure to properly administer the jury oath.

As an initial matter, this claim arises under state law and is not cognizable on federal habeas review. *Crawford v. Stephenson*, No. 21-1267, 2021 WL 4173452, at *2 (6th Cir. Aug. 4, 2021); *see also Calloway v. McQuiggin*, No. 2:11-CV-10005, 2013 WL 4784412, at * (E.D. Mich. Sept. 6, 2013) (noting that "the swearing of the jury generally involves a matter of state law that is not cognizable in federal habeas review"). More importantly, as the trial court observed, this claim is directly refuted by the transcript, which states, "At or about 12:48 p.m., jury sworn." (ECF No. 15-5 at PageID.401.) Accordingly, even if the claim were a proper subject of federal habeas review, it would lack merit.

For the same reasons, Petitioner's ineffective assistance of counsel claim lacks merit, as counsel is not obligated to make a meritless objection, and an attorney's failure to raise a meritless argument cannot form the basis of a successful ineffective assistance of counsel claim. *United States v. Kimler*, 167 F.3d 889, 893 (5th Cir. 1999). Therefore, the trial court's rejection of Petitioner's ineffective assistance claim was neither contrary to, nor an unreasonable application of, clearly established federal law. In addition, its decision was not based on an unreasonable determination of the facts in light of the evidence presented. Thus, this claim presents no basis for habeas relief.

### 6.    Ineffective Assistance of Appellate Counsel

Petitioner's final claim, set forth in ground V, is that appellate counsel was ineffective for failing to raise his issues VI through XII on appeal. The trial court rejected this claim because it "did not find any of the foregoing claims to be meritorious." (ECF No. 49-4 at PageID.1205.)

The *Strickland* standard that applies to trial counsel also applies to appellate counsel. But the boundaries of professionally reasonable conduct change somewhat in the appellate context. An appellant has no constitutional right to have every non-frivolous issue raised on appeal. "'[W]innowing out weaker arguments on appeal and focusing on' those more likely to prevail, far from being evidence of incompetence, is the hallmark of effective appellate advocacy." *Smith v. Murray*, 477 U.S. 527, 536 (1986) (quoting *Jones v. Barnes*, 463 U.S. 745, 751-52 (1983)). To require appellate counsel to raise every possible colorable issue "would interfere with the constitutionally protected independence of counsel and restrict the wide latitude counsel must have in making tactical decisions." *Strickland*, 466 U.S. at 689. As the Supreme Court has observed, it is difficult to demonstrate that an appellate attorney has violated the performance prong where the attorney presents one argument on appeal rather than another. *Smith v. Robbins*, 528 U.S. 259, 287-88 (2000). In such cases, the petitioner must demonstrate that the issue not presented "was clearly stronger than issues that counsel did present." *Id.* at 288.

In spite of Petitioner's argument, the trial court's rejection of this claim on the basis that none of Petitioner's claims asserted in his Rule 6.500 motion had merit is neither contrary to, nor an unreasonable application of, *Strickland*. *See Coley*, 706 F.3d at 752 ("Omitting meritless arguments is neither professionally unreasonable nor prejudicial."). Therefore, Petitioner is not entitled to habeas relief.

## Certificate of Appealability

Under 28 U.S.C. § 2253(c)(2), the Court must determine whether a certificate of appealability should be granted. A certificate should issue if Petitioner has demonstrated a "substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). The Sixth Circuit Court of Appeals has disapproved issuance of blanket denials of a certificate of appealability. *Murphy v. Ohio*, 263 F.3d 466, 467 (6th Cir. 2001) (per curiam). Rather, the district court must "engage in a reasoned assessment of each claim" to determine whether a certificate is warranted. *Id.* Each issue must be considered under the standards set forth by the Supreme Court in *Slack v. McDaniel*, 529 U.S. 473 (2000). *Murphy*, 263 F.3d at 467. Consequently, this Court has examined each of Petitioner's claims under the *Slack* standard. Under *Slack*, 529 U.S. at 484, to warrant a grant of the certificate, "[t]he petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." *Id.* "A petitioner satisfies this standard by demonstrating that . . . jurists could conclude the issues presented are adequate to deserve encouragement to proceed further." *Miller-El v. Cockrell*, 537 U.S. 322, 327 (2003). In applying this standard, the Court may not conduct a full merits review, but must limit its examination to a threshold inquiry into the underlying merit of Petitioner's claims. *Id.*

The Court finds that reasonable jurists could not conclude that this Court's dismissal of Petitioner's claims would be debatable or wrong. Therefore, the Court will deny Petitioner a certificate of appealability. However, although Petitioner has failed to demonstrate that he is in custody in violation of the Constitution and has failed to make a substantial showing of a denial of a constitutional right, the Court does not conclude that any issue Petitioner might raise on appeal would be frivolous. *Coppedge v. United States*, 369 U.S. 438, 445 (1962).

## **<u>Conclusion</u>**

For the foregoing reasons, Petitioner's habeas petition and a certificate of appealability will be denied. A separate order and separate judgment will enter.

Dated: October 20, 2021          <u> /s/ Sally J. Berens       </u>
                                                            SALLY J. BERENS
                                                            U.S. Magistrate Judge